## Case No. 9,835.

### MORRIS v. ROYER et al.

[3 Fish. Pat. Cas. 176; 2 Bond, 66.] [1]

Circuit Court, S. D. Ohio. March, 1867.

PATENTS — REISSUE — WOOD-BENDING MACHINE—
COMBINATION.

1. A construction or mode of operating a machine, described or distinctly referred to, but not claimed, in an original patent, may be claimed in a reissue.

2. Morris' patent of March 11, 1856, and the reissue thereof, dated May 27, 1862, for "improvement in wood-bending machines," defined, construed, and sustained.

3. The first claim of said patent *held* to be for a combination of a stationary form, clamps, and levers, whether said levers do or do not work upon fixed fulcrums.

4. The third claim *held* to be for the elements named in the first claim, in combination with hooks, or hooks and pins, to hold the bent wood to the form.

5. The novelty of Morris' patent is not impeached by the inventions described in Thomas Blanchard's patent of December 18, 1849, for "improved method of bending wood."

6. A machine employing a stationary form, clamps, and levers, in which the levers did not work upon fixed fulcrums, *held* to be an infringement of Morris' patent.

This was a suit in equity, brought [against Theodore Royer, Samuel T. J. Coleman, and John Young] to restrain the infringement of letters patent [No. 14,405] for "improvement in wood-bending machines," granted to John C. Morris, March 11, 1856, and reissued May 27, 1862 [No. 1,312].

The invention of Morris consisted of a stationary form or mold, around which wood could be bent into any required shape. The bending was effected by placing the center of a piece of wood, previously steamed, against the center of the mold, and clamping them together. Levers then pressed against the ends of the wood, and gradually forced them around the form; the levers being drawn together by cords wound upon a drum. In bending the wood, the inner fibers were condensed and the outer ones stretched. But while wood may be greatly compressed without injury, a slight stretching tears the fibers. To obviate this difficulty, the wood, before being bent, was laid upon a strap of flexible iron, and the ends were confined between two blocks of solid iron, called clamps or abutments, which were attached to the flexible strap. By this means the stretching of the outer fiber was prevented, and the entire change in the length of the fiber, caused by the bending, took place by compression, in the inside of the curve.

The principal defense upon the issue of novelty, was founded upon a patent granted to Thomas Blanchard, December 18, 1849 [Patent No. 6,951], in which the wood was bent by attaching one end of the stick to a form

1 [Reported by Samuel S. Fisher, Esq.; reprinted in 2 Bond, 66, and here republished by permission.]

which was rolled over the wood toward the other end.

The material portions of the specification and claims of Morris' patent were as follows:

"The machines for bending wood may be divided into two principal groups or classes— the first including all the machines in which the bending process commences at one end of the wood, and is continued in the direction of the other; and the second including those in which the form or mold is first applied at or near the center of the piece to be bent, and the bending process is continued from that point toward each end, which I call bending outward. I regard machines of the latter class as superior, from the fact that the change of the fiber of the wood, in the act of bending, goes on from the center toward the ends, in two directions, equalizing the strain, and distributing the compressed fibers more evenly throughout the curve.

"My improvements relate to the second class of machines. In my original patent, of which this is a reissue, reference was made to a previous use of levers, 'for bringing the piece to the required shape, by connecting said levers with a strap at each end, the strap being placed at the back of the piece required to be bent, and then drawing the ends of the levers together, which bends the piece around the form.' This reference was solely to a use of such a method which had been made by myself within less than two years previous to the application for my original patent.

"My improvements consist of devices tending to adapt the machines of the second class, as stated above, to the performance of good work, in an expeditious manner, and with the least loss of material. They are applicable to bending wood, to be used for any purpose, such as ship timber, wheel felloes, plow handles, chair stuff, and other articles. In some cases, as for bending plow handles, but one lever will be required, when the bending process will begin at the inner end of the curve, next to the portion of the piece left unbent, and will extend toward the outer end, bending the wood first in a large curve, and gradually reducing it smaller, until it conforms to the curvature of the mold.

"In bending wood around a form the outer fibers are stretched, while the inner fibers are compressed; but while wood may be greatly compressed without injury, comparatively little stretching or expansion will break the fibers of the outer curve. To prevent undue expansion, it is necessary to confine the wood between abutments placed at the ends, so as to counteract end expansion, by what is called in the art 'end pressure.' These abutments or clamps may wholly prevent end expansion, or may prevent it before or after a certain degree of pressure is reached in the process of bending.

\*     \*     \*     \*     \*     \*     \*

"k k, are levers or handles for guiding the bending operation. They may work upon the fulcrums m1, m2, m3, m4, or their equiv-

alents. These handles or levers support the clamps and serve to draw them, with the strap and piece to be bent, around the form or mold. They are operated by the cords n n and drum o. When the levers are thus used, the clamps or abutments connected to the strap g are adjusted so as to slide upon the sides of the levers, to allow the piece to be bent to accommodate itself to the form. Another mode of using the handles is to dispense with the fulcrum pins, so that in the operation of bending, while power is applied as before to the end of the handle, and the resistance is the unbent wood, the point of support is no longer fixed, but shifting, being found in the bending strap or point of contact of the strap and wood with the mold. In this method, which was that originally used by me, the abutments do not slide upon the handle, but may be made a part thereof, or attached thereto. The principal advantage of the fixed fulcrum is, that it prevents the wood from twisting in the process of bending, by reason of one side of the wood, or one of two pieces bent at the same time, being harder than the other. In such cases, without some rigid point of support preventing the levers from twisting or turning, it is difficult to make true work.

\*       \*       \*       \*       \*       \*       \*

"Having thus fully described my improvements, I do not wish to be understood as claiming them in connection with machines for bending wood where the bending is effected by the rotation of the form, but what I claim therein as new, and desire to secure by letters patent, is

"I. A wood-bending form, to which timbers are made to conform by bending them from the center or inner end of the desired curve outward, when used in combination with abutments or clamps to prevent or regulate end expansion, and levers, or handles, or their equivalents, to guide the bending, substantially as described.

"II. A stationary or poised wood-bending form in combination with the cords, levers, and drum, or their equivalents, and the eccentric clamp, or its equivalent, in the manner and for the purpose set forth.

"III. In combination with the stationary form, levers, and abutments, I claim the employment of hooks, or hooks and pins, or their equivalents, that shall embrace the ends of the wood, to restrain the wood in shape, and permit the removal of the abutments after the completion of each operation."

S. S. Fisher, for complainant.
George M. Lee, for defendants.

LEAVITT, District Judge. This is a bill in equity, charging, in the usual form, that the defendants have infringed the exclusive right of the complainant to certain improvements in a machine for bending wood, originally patented to him March 11, 1856, and for which he obtained a reissued patent dated May 27, 1862. The bill prays for an injunction and an account of profits.

In their answer, the defendants allege, as grounds of defense: First, that the reissued patent is fraudulent and void, as not being for the same invention claimed in the original patent; second, that complainant's patent is void for want of novelty in the invention; third, that defendants have not infringed the complainant's right under his patent.

I. As to the first ground of defense, namely, the invalidity of the reissued patent to the complainant, it is not alleged or claimed that there was actual fraud in obtaining it; but it is insisted that it is constructively fraudulent, as being an unwarranted modification or enlargement of the claim of the original patent. The argument is that the original patent provided only for fixed fulcrums for the levers used in the operation of wood bending; whereas, in the reissue, he provides for bending, not only by levers on fixed fulcrums, but also by straps connecting the ends of the levers, and bending the wood without fixed fulcrums. But a reference to the original patent will show clearly that both methods were in the contemplation of the invention, as suited to effect the object of his invention. He refers distinctly to the use of levers "for bringing the piece to the required shape, by connecting the levers with a strap at each end; the strap being placed at the back of the piece required to be bent, and then drawing the ends of the levers together, which bends the piece around the form." In the specification of the reissued patent, after referring to the patented machine as belonging to the class "in which the form or mold is first applied at or near the center of the piece to be bent, and the bending process is continued from that point toward each end, which I call bending outward," and describing minutely the devices by which the work may be effected by levers with fixed fulcrums, he says: "Another mode of using the handles (or levers) is to dispense with the fulcrum pins, so that in the operation of bending, while power is applied, as before, to the end of the handle, and the resistance is the unbent wood, the point of support is no longer fixed, but shifting, being found in the bending strap, or point of contact of the strap and wood with the mold." And this, he adds, "was the method originally used by me."

But without further reference to the claims and specifications of the two patents, in reference to the question whether the reissue is a departure from the original patent, in claiming the machine without the fixed fulcrums, I will refer briefly to the evidence, which is conclusive on this point. And it may be remarked here, that the identity of the invention claimed in the original patent and that claimed in the reissued patent, is a question to be decided by the evidence. If the case is at law, it is for the jury; if in chancery, for the court, as the facts proved may require. Now Mr. Clough, an expert wit-

ness for the complainant, in answer to an interrogatory put to him as to the claims of the original and the reissued patents, says: "The description of the apparatus described by Morris (referring to the original patent) is the same, and refers to the same drawings as are contained in the reissued letters patent." And in answer to another question, this witness says: "He (Morris) describes various modes of bending, including a mode in which the levers are not used on fixed fulcrums, but does not claim any mode except those in which fixed fulcrums to the levers are used." The same witness, in another part of his deposition, says: "In one mode described in Morris' specification, he dispenses with the fulcrum pin, so that the point of resistance is no longer fixed, but shifts in the bending strap or wood."

It is clear, then, as well by a comparison of the complainant's original and reissued patent, as by the testimony of the expert referred to, there is no such departure from, or expansion of, his invention as described in the original patent, as will invalidate the reissue on the ground of a constructive fraud. The complainant plainly describes the use of his bending machine without a fixed fulcrum, in his original specification, though he does not claim it as a part of his invention. In applying for a reissue, he distinctly claims this method of wood bending as a part of the combinations included in his patent. This he had an unquestioned right to do. The authorities on this point are numerous and explicit. O'Reilly v. Morse, 15 How. [56 U. S.] 112; Battin v. Taggart, 17 How. [58 U. S.] 83.

It is hardly necessary to add that the law is well settled by numerous adjudications, that there is always a strong legal presumption that a reissued patent is for the same invention described in the specification of the original patent. This presumption arises from the fact that upon the surrender of the original patent, and an application for a reissued patent with an amended specification, it is the duty of the commissioner of patents to see that the reissue is for the same invention described in the original patent, or if any part is not described, or inadvertently omitted, that, in fact, it was a part of the invention of the patentee. And in the latter case it is competent for the commissioner to receive testimony, and, on satisfactory proof, to treat it as a part of the invention, which may be properly claimed in the reissued patent. Allen v. Blunt [Cases Nos. 216 and 217]; [O'Reilly v. Morse] 15 How. [56 U. S.] 112. And it also seems to be well settled that the action of the commissioner of patents, in granting a reissue, cannot be questioned or impeached, unless on the ground of actual fraud in obtaining it, a palpable incongruity between the original and reissued patent, or an excess of authority on the part of the commissioner. [Battin v. Taggart] 17 How. [58 U. S.] 84; Law's Dig. p. 617, §§ 2–8. The exception to the complainant's reissued patent,

on the ground of fraud, cannot therefore be sustained.

II. The objection to the complainant's claim in this suit, on the ground of the want of novelty in his patented invention, will now be briefly noticed. Evidence has been adduced by the defendant to prove the existence of several wood-bending machines, anterior to the date of the patent to the complainant, and which, it is insisted, embody all the elements of the several combinations claimed in his reissue. Models of several of these machines have been exhibited for the inspection of the court, and are referred to in the testimony of the experts. Among others, a patent to Thomas Blanchard, dated December 18, 1849, and reissued to him, November 15, 1859, for a wood-bending machine, is relied on as anticipating the invention patented to the complainant, Morris. I do not propose to describe the several machines relied on by the defendants to impeach the novelty of the complainant's combination. Whether they are substantially identical with the latter, is a question of fact, to be decided according to the evidence. And on this point, the testimony of several learned and reliable experts has been taken, which is remarkably harmonious, and entirely satisfactory to the court.

It is not necessary to refer minutely to the description of the complainant's machine, as set forth in his specification. It will be sufficient to refer to the first and third claims of his reissued patent, in order to a correct understanding of the testimony of the experts. No infringement of the second claim being alleged by the complainant, it is not necessary to refer to it.

The complainant, after describing his improvements, disclaims any connection with machines for bending wood by a rotating form. He claims: 1. "A wood-bending form, to which timbers are made to conform, by bending them from the center or inner end of the desired curve, outward, when used in combination with abutments, or clamps, to prevent or regulate end expansion, and levers or handles, or their equivalents, to guide the bending, substantially as described." 3. "In combination with the stationary form, levers, and abutments, I claim the employment of hooks, or hooks and pins, or their equivalents, that shall embrace the ends of the wood, to restrain the wood in shape, and permit the removal of the abutments, after the completion of each operation."

The first of these claims is, for the combination of a stationary form to which the wood is made to conform by bending from the center outward, with abutments and clamps to prevent or regulate end expansion, and levers or their equivalents to guide the bending. The third claim is a combination of the parts described in the first claim, with the addition of hooks, or hooks and pins, or their equivalents.

The witness, Renwick, an expert, examined

by the complainant in reference to the Blanchard patent, says: "That the improvements specified in the reissued letters patent to John C. Morris are not anticipated by anything that is described or specified in the said Blanchard patent; but, on the contrary, the improvements described and specified in the Blanchard patent are substantially different from those described and specified in the Morris patent." He then proceeds, very fully and intelligently, to define the points of difference between the two inventions.

The witness, Clough, another reliable expert, testifying as a witness for the complainant, concurs fully in the opinion of Renwick as to the substantial difference between the principle of the Blanchard and Morris machines. And his attention being specially called to the various other models and patents for machines, claimed by the defendants as embodying the different elements of the Morris combinations, he says: "In my opinion, the combination set forth in Morris' first and third claims are not found in any of the exhibits referred to in said question."

The witness, Knight, another expert, thoroughly versed in mechanics and mechanical philosophy, called by the defendants, on his cross-examination in reference to the various patents, models, and exhibits referred to, after describing the combinations claimed by the Morris patent, says he does not find in any of them the same combination. This witness also testifies that the rotating form for wood bending, described and claimed by Blanchard, is not a mechanical equivalent for the stationary form claimed by Morris.

Another witness, Cotton, also called by the defendants, says, the two machines, Blanchard's and Morris', are widely different in the principle of their operation.

The conclusion from this evidence is irresistible, that the combination patented to the complainant is not anticipated by the evidence of any wood-bending machine known prior to the date of this invention; and it follows that the defense of want of novelty in his invention is not sustained.

III. The only other inquiry is, whether the five machines, which it is admitted were used by these defendants, are substantially identical with that patented to the complainant.

The defendants, as already noticed, are licensees of the assignees of the Blanchard patent. Models, which it is admitted truly represent the five machines used by the defendants, and which it is contended by the counsel of the complainant, infringe his patent, are exhibited to the court. They are referred to in the testimony of the experts as "Models I" and "Model X," and described in the Exhibit A. In form and appearance these machines are altogether unlike the machines constructed under the Blanchard patent, and very nearly resemble the Morris machine. The only material variation in these structures, insisted on by the defendant's

counsel, is that in the machines used by them, there is no provision for working them with a fixed fulcrum for the levers, in the operation of bending, and that they have no such fixed fulcrum. It is claimed that, as this material element is omitted in the defendant's machines, they do not infringe the first or third claim of the Morris patent. It is insisted that the Morris claim is for a machine operated by fixed fulcrums, and does not embrace a machine working without a fixed fulcrum. In a previous part of this opinion, a construction has been given to the claim of the Morris patent, on the point now under consideration, and the conclusion stated, that his patent includes not only the use of a fixed fulcrum, but also the use of levers for bringing the wood to the required shape, by connecting them with a strap at each end, and drawing the ends of the levers together, thus bending the wood around the form or mold. If this construction of the Morris claim is correct, it follows necessarily that the defendants are not shielded from liability by omitting the fixed fulcrum in their machine.

The identity of the machine claimed in the Morris patent, and those used by defendants, is a question of fact, the solution of which depends on the evidence. I will refer, briefly, to this evidence, which is quite conclusive as to the substantial identity of the machines. And, I may add here, that this testimony most decisively sustains the views indicated by the court, as to the scope of the claim of the Morris patent. The very intelligent and scientific experts agree, in saying, the machines used by defendants, though operated without a fixed fulcrum, are substantially identical with the machine described and claimed by Morris.

The witness, E. S. Renwick, says the model marked "X," before referred to, "represents a machine which would embody the improvements recited in the first and third claims of the reissued letters patent of John C. Morris." He then proceeds, at great length and with great clearness, to state the reasons for this conclusion. He says, among other things, that "the lever handle, in the model (X) is operated without a fixed fulcrum, and in this respect varies from the levers represented in the drawing; but this variation does not, in my opinion, make the lever handle of the model substantially different from the lever handle which constitutes a member of the combination (Morris') above referred to, because the former operates substantially in the same manner as the latter, * * * and because the patent provides for the operation of a lever without a fixed fulcrum as an alternate mode of construction." There are other portions of the testimony of the witness on this point equally clear and explicit, which it is not necessary to recite.

William Clough, complainant's expert, says: "The machine marked 'A' (being that

used by the defendants) conforms in its principles and mode of operation to one of the modes described in the letters patent (Morris'), and includes all the elements of the combination in the first claim of said patent." And again: "In one mode described in Morris' specification, it dispenses with the fulcrum pin, so that the point of resistance is no longer fixed, but shifts in the bending strap or wood."

George H. Knight, another expert, called by the defendants, testifies that the claim of the reissued patent to Morris "describes a machine containing no fixed fulcrums. The machine represented by the model I is a substantial embodiment of said alleged modification."

And the witness, W. C. Hibberd, an expert witness for the defendants, being asked to point out the substantial difference between a machine constructed under Morris' claim, without the fixed fulcrum, and the machine used by the defendants, says: "I do not see that it (the latter machine) does differ materially" from the Morris machine. And adds: "I should judge that the language (referring to Morris' specification) was intended to cover just such a bending apparatus as is shown in model I."

The evidence as to the substantial identity of the machine used by defendants and that covered by the complainant's patent, is altogether conclusive; and the fact of infringement is therefore clearly made out.

All the issues made in the case being found in favor of the complainant, a decree may be entered accordingly, for a perpetual injunction, providing, if necessary, for a reference to a master, to ascertain the amount of damages to be awarded.

[For another case involving this patent, see Morris v. Barrett, Case No. 9,827.]